**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 14, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1548**

**STATE OF WISCONSIN**

Cir. Ct. No. 2014CV739

**IN COURT OF APPEALS
DISTRICT II**

POWERBRACE CORPORATION,

    PLAINTIFF-RESPONDENT,

  V.

GREDE HOLDINGS LLC,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Kenosha County: ANTHONY MILISAUSKAS, Judge. *Affirmed*.

        Before Neubauer, C.J., Gundrum and Stark, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This case involves the breach of a commercial contract. The trial court found that Grede Holdings, LLC, supplied defective materials to Powerbrace Corporation, Powerbrace gave Grede proper notice of the defects, Grede did not avail itself of inspection opportunities, and Powerbrace therefore is entitled to recover its contractual damages. The court's findings are amply supported by the record. We affirm the judgment.

¶2 Powerbrace assembles and sells "brake beams," an integral safety component of trains' brake systems. Attached to the brake beams are duct-iron casting brake heads, which Grede manufactured for Kenosha-based Powerbrace until 2003. Powerbrace later moved its brake line assembly to Saltillo, Mexico.

¶3 In the summer of 2011, to fill a rush demand, Powerbrace contacted Grede. The parties entered into a one-year Supply Agreement for Grede to provide 255,000 brake heads to Powerbrace by August 2012. Grede's sales representative, Chuck Glasgow, and Powerbrace's vice president of purchasing, John Vitkus, negotiated the deal. Under the Agreement, Grede warranted that the supplied brake heads would be free from defects in terms of material and workmanship and would conform to Powerbrace's specifications and designs. Within a month after delivery began, however, Powerbrace found defects in virtually every shipment.[1] Per their agreement, Powerbrace gave Grede written notice of defects and rejections.

---

[1] Most of the defects, which need not be detailed here, apparently were caused by Grede's inability to control the pouring temperature. The point is that any of the defects could have affected the working of a train's brakes, with potentially catastrophic results.

¶4 By early 2012, Powerbrace had rejected as defective 17,877 delivered brake heads. In March 2012, for the first time since Powerbrace's August 2011 complaints, a Grede representative inspected the brake heads at the Saltillo plant and confirmed the defects. Around the time the Supply Agreement ended in August 2012, a second Grede representative went to Saltillo, confirmed and documented the defects with photographs, and told Powerbrace to scrap the parts. Powerbrace instead stored the brake heads at the Saltillo plant, where they still were available for inspection at the time of trial.

¶5 Powerbrace attempted to discuss the defective parts with Grede in February 2013. Grede instructed its employees not to speak with Powerbrace. In August 2013, Powerbrace tried to mitigate its damages by testing some of the rejected brake heads to see if they were usable in after-market applications. When put into assembly, they cracked due to the same quality issues for which they previously had been rejected and about which Grede had been given notice. When Vitkus tried to contact Glasgow after the failed mitigation run, Glasgow would not return his calls. Powerbrace filed suit in February 2014.

¶6 After a court trial, the court found that the parties were bound by the "pretty clear" Supply Agreement, that the defects were due to material and workmanship issues, that Grede either had received or waived proper notices of the defects, and that Powerbrace was entitled to damages for Grede's breach. It also found there were no side agreements by which Powerbrace could recover collateral costs. After off-setting the $34,000 Powerbrace still owed Grede for

delivered, nondefective parts, the court entered judgment in Powerbrace's favor for $365,502.94.[2] Grede appeals.

¶7 We first address our standard of review. Grede correctly describes this as "a simple case of holding two companies to the terms of their commercial supply contract." That is exactly what the trial court did. While Grede urges de novo review of the court's application of facts to the Supply Agreement and to the law of waiver, it devotes its brief to a challenge to the court's factual findings. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." WIS. STAT. § 805.17(2) (2017-18).[3]

¶8 The court found that, based upon the exhibits and the credible testimony of the witnesses, the brake heads were defective. The exhibits included numerous e-mails from Powerbrace to Grede describing the various flaws, as well as photos, some taken by a Grede representative clearly showing the defects.

¶9 Glasgow, Grede's sole witness, testified that the defective brake heads were caused by old and worn tooling, although he never physically examined the rejected brake heads himself. He said that when the parties were negotiating the Supply Agreement, he expressed his concern to Vitkus about using worn tooling on a rush order but Powerbrace refused to pay to replace it.

---

[2] Powerbrace disputed the $34,000 off-set at trial but does not appeal that ruling.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶10 Vitkus testified that he recalled no discussions about worn tooling and e-mail communication exhibits submitted at trial did not raise worn tooling as a concern by Grede. Also, Powerbrace's senior project engineer testified that workmanship and the process itself, not tooling, is what caused shrinkage in the rejected brake heads. The court's finding that Grede produced a defective product due to material and workmanship issues is not clearly erroneous.

¶11 The court also found that Powerbrace gave timely notice of defect at least twenty-nine times, the first just a month after the parties signed the Supply Agreement. The evidence was that Glasgow acknowledged receiving notice of the defects, two Grede representatives inspected and confirmed the defects, one representative compiled a photo album showing the flawed products, and Grede often did not respond to contacts from Powerbrace. The court's finding as to notice is well-supported in the record.

¶12 Grede contends the court relieved Powerbrace of the notice requirement in regard to the defects discovered as a result of the August 2013 parts run, such that it had no opportunity to verify those defects. Powerbrace already had provided notice to Grede of those defective parts and was endeavoring to mitigate its damages by putting them into other applications. Because the defective parts still were unusable, whether due to the same or new defects, Powerbrace was not obligated to give Grede yet another round of notices.

¶13 Finally, the court found that it was "quite clear" from the testimony that Grede had ample opportunity to inspect the brake heads; that Grede waited at least six months after the first notice of defect to do so; that once inspected, Grede decided it was too costly to ship the brake heads back to its plant and told Powerbrace to scrap them; and that, in fact, the products still were in Mexico and

accessible to Grede.[4]  The court concluded that, as Powerbrace "went out of [its] way" to make the break heads available for inspection, Grede waived whatever further opportunity it had to inspect because it "basically ha[s] walked away from [its] responsibility to inspect the products and to make a determination as to damages."  The court's findings are not clearly erroneous.  We affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Grede has a plant in Monterrey, Mexico, about an hour from Saltillo.